# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MICHAEL WILLIAMS**                                        **CIVIL ACTION**

**VERSUS**
                                                           **NO. 15-644-SDD-RLB**
**SYNGENTA CORPORATION, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 3, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**MICHAEL WILLIAMS**                                    **CIVIL ACTION**

**VERSUS**

**NO. 15-644-SDD-RLB**

**SYNGENTA CORPORATION, ET AL.**

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

Before the court is Michael Williams's ("Plaintiff")[1] Motion to Remand. (R. Doc. 24).

Defendants Syngenta Corporation and Syngenta Corp Protection, LLC (collectively,

"Syngenta"), Hagemeyer North America, Inc. ("Hagemeyer"), and Power Cleaning Specialists,

Inc. ("PCS") (collectively, "Defendants") oppose the motion. (R. Docs. 29, 34, 35).

Also before the court is PCS's Motion to Dismiss. (R. Doc. 20).  The motion is opposed

by Plaintiff.  (R. Doc. 26).  PCS has filed a Reply. (R. Doc. 38).

Also before the court is PCS's Motion to Strike Exhibits Accompanying Plaintiff's

Opposition to PCS's Motion to Dismiss. (R. Doc. 32).  The motion is opposed by Plaintiff. (R.

Doc. 42).  PCS has filed a Reply. (R. Doc. 48).

All of the foregoing motions have been referred to the undersigned.  Because they all

concern whether Plaintiff can recover against PCS, the court considers them together.

---

[1] On October 3, 2015, Plaintiff's counsel informed the court that Mr. Williams died that morning. (R. Doc. 12).  Subsequent filings by Plaintiff's counsel names Mr. Williams's wife, Rhonda Williams, individually and as personal representative of Mr. Williams's estate, as plaintiff.  There has been no formal motion to substitute Mr. Williams's wife as plaintiff.  To avoid confusion, the court will refer to all motions filed by either Mr. Williams or his wife as filed by "Plaintiff."

I.      **Factual Background and Procedural History**

On or about August 31, 2015, Plaintiff initiated this action against Syngenta, Hagemeyer, and PCS in the 18th Judicial District Court, Iberville Parish, Louisiana. (R. Doc. 1-2, "Petition"). Plaintiff alleges that while he was employed by PCS, he was exposed to "hazardous materials on the Syngenta Crop Protection site" in St. Gabriel, Louisiana "on a regular and systematic time until September 5, 2014." (Petition, ¶¶ 3.1, 3.2).  Plaintiff further alleges that the protective clothing he wore while working at the Syngenta facility was "a disposable Tyvek brand protective suit" marketed, distributed, and sold by Hagemeyer. (Petition, ¶ 3.2).  Plaintiff claims that the Defendants "knew that users of the protective suits such as the one used by Michael Williams would be participating in this ultra-hazardous activity" and, "[d]espite this knowledge, the Defendants failed to identify and evaluate the level of protection and exposure hazard, failed to provide the proper personal safety equipment, failed to warn of the dangerous condition, and failed to adequately train all persons involved, thus leading to the accident." (Petition, ¶ 3.3). Plaintiff alleges that he was diagnosed with Non-Hodgkin's Lymphoma on September 5, 2014, as a result of his chemical exposure at the Syngenta facility. (Petition, ¶ 3.4).

With regard to his former employer, Plaintiff alleges that PCS "knew or should have known that the lack of the proper safety equipment was substantially certain to lead to the injury and death of Michael Williams; however, it failed to offer the proper personal safety equipment necessary to provide for the personal well being and safety of its employees such as [Plaintiff]." (Petition, ¶ 6.2).  Plaintiff alleges that "PCS committed acts of omission and commission, which collectively and severally, were either intentional or constituted negligen[ce] and recklessness, which acts were a proximate cause of the injuries to [Plaintiff], the physical pain and mental anguish he suffered, and continues to suffer, and the damages suffered by [Plaintiff]. (Petition, ¶

6.3).  Finally, Plaintiff alleges that "PCS did not provide workers' compensation benefits to [Plaintiff] for the injuries he sustained while working for it at Syngenta" and "PCS committed acts (including providing a suit that offered no chemical protection) which can only be described as intentional and are actionable as an exception to the exclusivity rule found in the workers compensation scheme." (Petition, ¶ 6.4).

On September 28, 2015, Syngenta removed the action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1).  The Notice of Removal alleges that Plaintiff is a citizen of Louisiana; Syngenta Corporation is a citizen of Delaware; Syngenta Crop Protection LLC is a citizen of Delaware and Minnesota; Hagemeyer is a citizen of Delaware and South Carolina; and PCS is a citizen of Louisiana. (R. Doc. 1 at 2-3).

The Notice of Removal asserts that PCS, a non-diverse defendant, has been improperly joined as a defendant in light of the Louisiana Workers' Compensation Act's ("LWCA") exclusivity provision, La. R.S. § 23:1032, and, accordingly, its citizenship must be ignored for jurisdictional purposes. (R. Doc. 3-7).  Syngenta attached to the Notice of Removal an affidavit by the vice president of PCS providing that Plaintiff informed him of his diagnosis on September 5, 2014, but that he "was not aware that Mr. Williams or anyone else believed Mr. Williams' illness was related to any work undertaken by him for [PCS] at the Syngenta plant." (R. Doc. 1-4).

On October 26, 2015, PCS moved to dismiss the claims for relief asserted against it pursuant to Rule 12(b)(6) on the basis that Plaintiff has not alleged sufficient facts to support a claim under the LWCA's exclusivity exception for intentional acts. (R. Doc. 20).

On October 28, 2015, Plaintiff moved for remand on the basis that the court lacks diversity jurisdiction because PCS is a proper non-diverse defendant in this action. (R. Doc. 24).

On November 25, 2015, PCS filed its motion to strike the two exhibits attached to Plaintiff's Opposition to PCS's Motion to Dismiss. (R. Doc. 32).

## II.    Arguments of the Parties

### A.    Motion to Remand

Plaintiff argues that the court does not have diversity jurisdiction over this matter because PCS is a properly joined non-diverse defendant. (R. Doc. 24-1 at 2-5).  Plaintiff argues that he has sufficiently alleged that PCS, his former employer, committed intentional acts and/or omissions that fall under the LWCA's exclusivity exception for intentional acts. (R. Doc. 24-1 at 5-9).  Specifically, Plaintiff argues that PCS "knew" that Plaintiff's lack of proper safety equipment and protective clothing to conduct his work was "substantially certain to lead to injury and death." (R. Doc. 24-1 at 9).

In separate oppositions, Defendants argue that PCS was improperly joined, and the court has diversity jurisdiction, because the Petition lacks sufficient factual allegations to show that Plaintiff has any possibility of overcoming the LWCA's exclusive remedy provision with regard to his allegations against PCS.  Defendants argue that Plaintiff's burden to overcome the exclusive remedy provision is "extremely high," as it requires PCS to have been "substantially certain" that the resulting injury to Plaintiff was "inevitable." (R. Doc. 29 at 2); (R. Doc. 34 at 6-7); (R. Doc. 35 at 7-8).  Defendants argue that Plaintiff's use of words and phrases in the Petition such as "knew or should have known," "intentional," "with specific certainty," and "substantially certain to occur" are conclusory and are not accompanied with supporting factual allegations. (R. Doc. 29 at 3-5); (R. Doc. 34 at 7-12); (R. Doc. 35 at 8-9).  Among other things, Defendants note that the Petition does not allege facts indicating that PCS knew or should have known that the protective suit at issue did not provide adequate protection, or that PCS was ever put on notice

4

that Plaintiff had been injured because the suits did not provide adequate protection. (R. Doc. 34 at 12); (R. Doc. 35 at 10-11).

**B.     Motion to Dismiss**

In support of dismissal, PCS similarly argues that Plaintiff has not alleged sufficient facts to support a claim under the LWCA's exclusivity exception for intentional acts, and his sole remedy is provided by the LWCA. (R. Doc. 20-1 at 4-10).

In opposition, Plaintiff argues that the Petition alleges sufficient facts to support a cause of action for an intentional tort against PCS that falls under the exception to LWCA's exclusivity provision. (R. Doc. 26 at 4-7).  Plaintiff argues that his allegations, if taken as true, "show that [PCS] knew that by requiring Michael Williams to work with carcinogenic materials with a suit that it knew provided no chemical protection was substantially certain to lead to the injury and illness of Michael Williams." (R. Doc. 26 at 9) (emphasis removed).  Plaintiff requests the court to deny PCS's motion to dismiss as premature because he has moved to remand, and, if his allegations in the Petition are found to be insufficient, to allow him leave to "replead" his allegations against PCS after conducting limited discovery. (R. Doc. 26 at 8).  Plaintiff references two exhibits attached to his opposition.  Exhibit A is pre-removal e-mail correspondence between counsel concerning the scheduling of Plaintiff's perpetuation deposition. (R. Doc. 26-1).[2]  Exhibit B is Plaintiff's "statement on the record" transcribed on August 20, 2015. (R. Doc. 26-2).  Among other things, Plaintiff asserts in his statement on the record that he told his supervisors at PCS that the Tyvek brand protective suits did not protect from chemical exposure when wet. (R. Doc. 26-2 at 8-11).

---

[2] This document is also attached to Plaintiff's Motion to Remand. (R. Doc. 24-2).

In reply, PCS argues that because it is not possible for it to have known that Plaintiff would develop Non-Hodgkin's Lymphoma by using the suit at issue, the court should deny Plaintiff's request for leave to amend as futile. (R. Doc. 38 at 5).

### C.     Motion to Strike

PCS argues that the attachments to Plaintiff's opposition to PCS's motion to dismiss must be struck from the record because they "were neither referred to in the pleadings, nor are they central to Plaintiff's claims." (R. Doc. 32 at 2).  PCS argues that Exhibit A should be excluded as it merely contains a logistical discussion between counsel regarding "efforts to reschedule the perpetuation deposition" and has no bearing on the sufficiency of Plaintiff's allegations against PCS. (R. Doc. 32-1 at 4).  PCS argues that although Plaintiff's statement on the record was taken eleven days before the suit was filed in state court, Plaintiff did not incorporate the substance of his statements into the Petition and did not reference Exhibit B in the Petition. (R. Doc. 32-1 at 4-5).  Finally, PCS represents it did not become aware of Plaintiff's statement until Plaintiff filed it into the record. (R. Doc. 32-1 at 5).

In opposition, Plaintiff argues that the court "may consider both exhibits both to supplement the factual allegations in the pleadings and for context needed to evaluate the sufficiency of the pleadings at this early stage in the litigation when a man died before he could testify, no formal discovery has occurred, and Plaintiff has, alternatively, requested the right to amend its pleadings if required." (R. Doc. 42 at 5).

In reply, PCS argues that Plaintiff is suggesting a new rule for consideration of documents outside of the pleadings that contravenes Fifth Circuit precedent. (R. Doc. 48 at 4).

III.     **Law and Analysis**

A.      **Plaintiff's Motion to Remand**

1.      **Improper Joinder**

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).  When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1).[3]  Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").  Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).  The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).  The removing party has the burden of proving federal diversity jurisdiction. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).  To meet its burden, the removing party must show an "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id*. at 646-47.  In the latter situation, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of

---

[3] There is no dispute that the amount in controversy requirement is satisfied.  Accordingly, the court will turn directly to the issue of whether PCS was improperly joined as a defendant.

recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004).[4]

Generally, a court should "conduct a Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. at 573. However, where a plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether a non-diverse defendant has been improperly joined. *Id.*  Although the court may consider "summary judgment-type evidence in the record," it must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

### 2.    The Louisiana Workers' Compensation Act

Under the LWCA's exclusivity provision, an employee's exclusive remedy against his employer and any coworkers for personal injuries sustained during the course and scope of employment is ordinarily limited to recovering workers' compensation benefits rather than tort damages. La. R.S. § 23:1032(A); *see McClin v. H & H Lure Co.*, 102 F. Supp. 2d 341, 343 (M.D. La. 2000).  However, this tort immunity does not apply when the employee's injuries are the result of an intentional act. La. R.S. § 23:1032(B).  In those instances, the statute does nothing to shield the liability of an employer or co-employee.  The plaintiff bears the burden of demonstrating the work-related injury resulted from an intentional act. *Mayer v. Valentine Sugars, Inc.*, 444 So.2d 618, 621 (La. 1984).

---

[4] As the removing defendants have not alleged actual fraud in Plaintiff's pleading of jurisdictional facts, the court will only consider the latter test for improper joinder.

The intentional act exception to workers' compensation is narrowly construed. *Reeves v. Structural Preservation Systems*, 731 So.2d 208 (La. 1999).  An act is intentional whenever the defendant employer "either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct." *Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 195 (5th Cir. 2002) (quoting *Bazley v. Tortorich*, 397 So.2d 475, 482 (La. 1981)).  Generally, Louisiana courts recognize that "mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulation or the failure to use safety equipment by an employer does not constitute intentional wrongdoing." *DelaHoussaye v. Morton Intern. Inc.*, 300 Fed. App'x 257, 258 (5th Cir. 2008) (citing *Micele v. CPC of La., Inc.,* 709 So.2d 1065, 1068 (La. App. 4th Cir. 1998)); *see also Rosales v. Bunzzy's Enter. Realty LLC*, No. 06-11149, 2008 WL 754856, at *2 (E.D. La. Mar. 19, 2008) (identifying certain situations that Louisiana courts have determined "almost universally do not form the basis of an intentional tort: failure to provide a safe place to work, poorly designed machinery, failure to follow OSHA safety provisions, failure to provide requested safety equipment, and failure to correct unsafe working conditions.") (citing *Zimko v. American Cyanamid*, 905 So.2d 465, 477 (La. App. 4th Cir. 2005)).

The Louisiana Supreme Court has noted that "[b]elieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." *Reeves*, 731 So.2d at 212.  Instead, the phrase "'[s]ubstantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.'" *Id*. (citing *Jasmin v. HNV Cent.*

9

*Riverfront Corp.*, 642 So. 2d 311, 312 (La. App. 4th Cir. 1994)).  *See also Guillory v. Domtar Industries Inc*., 95 F.3d 1320, at 1327 (5th Cir. 1996) ("[T]he substantially certain test is satisfied when an employer *consciously* subjects an employee to a hazardous or defective work environment where injury to the employee is *nearly inevitable*—that is, injury is 'almost certain' or 'virtually sure' to occur or is incapable of being avoided.") (emphasis original) (citing *Kent v. Jomac Products, Inc*., 542 So.2d 99, 100 (La App. 1st Cir. 1989); *Bourque v. Nan Ya Plastics Corp., America*, 906 F. Supp. 348, at 353 (M.D. La. 1995) ("An injury is not "substantially certain" to occur merely because a high probability of injury exists; injury is only intentionally caused where the injury is virtually sure to occur, or nearly inevitable."), *aff'd*, 157 F.3d 903 (5th Cir. 1998).

### 3.    Whether PCS was Improperly Joined

Plaintiff has moved for remand (R. Doc. 24) on the basis that PCS is properly joined as a defendant and its presence in this lawsuit destroys complete diversity.[5]  Defendants argue that PCS is improperly joined and Plaintiff's sole remedy as to PCS is workers' compensation.[6]

Accordingly, the court turns to whether, based on his allegations in the Petition, there is a reasonable basis to predict that Plaintiff might be able to recover against PCS.[7]  In pertinent part, Plaintiff asserts the following allegations regarding PCS's alleged conduct and intent:

---

[5] The court must first determine whether it has subject-matter jurisdiction over this action before turning to PCS's motion to dismiss. *See Mclin v. H & H Lure Co.*, 102 F. Supp. 2d 341, 343 n. 2 (M.D. La. 2000) ("Before the Court can rule on the motion to dismiss, the Court must first determine if the Court has subject matter jurisdiction. To determine if the Court has subject matter jurisdiction, the Court must first determine if there was a fraudulent joinder. If the Court finds there was a fraudulent joinder, it is in effect finding that the plaintiffs have no cause of action against the non-diverse defendant.").

[6] An "occupational disease" contracted as a result of workplace conditions is covered under the LWCA. *See* La. R.S. § 23:1031.1.  Plaintiff has not argued that his alleged chemical exposure while working for PCS and his later development of Non-Hodkin's Lymphoma are outside of the definition of "occupational disease" or otherwise are not covered by the LWCA.  Accordingly, the court will assume, for the purpose of the instant motions, that Plaintiff's illness is covered by the LWCA unless it falls under the intentional act exception. *See Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 846 at 2 (E.D. La. 2011) (listing cases).

[7] The court finds it inappropriate to "pierce the pleadings" and consider evidence outside of the Petition.

[PCS] knew that users of the protective suits such as the one used by [Plaintiff] would be participating in this ultra-hazardous activity. Despite this knowledge, [PCS] failed to identify and evaluate the level of protection and exposure hazard, failed to provide the proper personal safety equipment, failed to warn of the dangerous condition, and failed to adequately train all persons involved, thus leading to this accident.  (Petition, ¶ 3.3).

PCS knew or should known that the lack of the proper safety equipment was substantially certain to lead to the injury and death of [Plaintiff]; however, it failed to offer the proper personal safety equipment necessary to provide for the personal well being and safety of its employees such as [Plaintiff].  (Petition, ¶ 6.2).

PCS committed acts of omission and commission, which collectively and severally, were either intentional or constituted negligent and recklessness. . . . This negligence and intentional conduct includes, but is not limited to the following: (a.) Failed to identify and evaluate the hazards of the personal safety equipment offered to its employees; (b.) Failed to ensure the use of proper equipment (including but not limited to protective suits) needed by its employees performing work in a hazard scenario; (c.) Failed to obtain and provide proper training to its employees; and (d.) Requiring employees to work in a dangerous environment without adequate personal protective equipment. (Petition, ¶ 6.3).

PCS committed acts (including providing a suit that offered no chemical protection) which can only be described as intentional and are actionable as an exception to the exclusivity rule found in the workers compensation scheme. Defendant PCS knew that by requiring [Plaintiff] to work with carcinogenic materials with a suit that it knew provided no chemical protection such was substantially certain to lead to the injury and illness of [Plaintiff].  (Petition, ¶ 6.4).

[PCS's] disregard for [Plaintiff's] safety by allowing him to be exposed to hazardous chemicals when it knew or should have known the personal safety equipment offered to [Plaintiff] was inadequate and dangerous and that the exposure allowed by the personal safety equipment to hazardous chemicals that will cause death and serious bodily injuries constituted an ultra-hazardous activity under Louisiana Law.  (Petition, ¶ 7.1).

Plaintiff relies upon the allegations found in paragraphs 3.3, 6.2, and 6.4, specifically

highlighting the terms "ultra-hazardous activity"; "knew"; "substantially certain to lead to injury

---

None of the parties has identified omissions or misstatements of "discrete facts that would determine the propriety of joinder" that merit a summary inquiry. *See Smallwood*, 385 F.3d at 573.  Accordingly, the court's analysis of improper joinder is limited to the allegations in the Petition.

and death"; "intentional"; and "no chemical protection." (R. Doc. 24-1 at 9).  Based on these

allegations, Plaintiff argues that he has "sufficiently pled that PCS knew that by working with

carcinogenic materials with a suit that offered no chemical protection it was substantially certain

that Michael Williams would be injured" and PCS knew its conduct "would certainly lead to

injury or death." (R. Doc. 24-1 at 9).

This court has considered similar allegations in the context of an improper joinder

analysis.  In *Mclin v. H & H Lure Co.*, 102 F. Supp. 2d 341 (M.D. La. 2000), the petition alleged

that the plaintiff-employee had "sustained a collapsed lung and other ailments caused by

sustained and prolonged exposure to paints while working for one of the defendants as a lure

painter." *Id*. at 342.  In determining whether to grant the defendant-employer's motion to

dismiss, the court analyzed whether it had subject-matter jurisdiction over the removed action

under the theory of improper joinder. *Id*. at 342-43.  The petition alleged that the defendant-

employer's actions "amount[ed] to an intentional tort or action in that [the defendant-employer]

knew full well that plaintiffs [sic] injuries were substantially certain to follow her working over a

period of time with toxic chemicals in an unventilated area without proper protective

equipment." *Id*. at 345.  This court held that it is "not bound by [plaintiffs'] conclusory

allegation" because the petition lacked any specific facts and the plaintiffs had failed to "offer

any other evidence which even hint[ed] of any specific facts" to support their intentional tort

claim against the defendant-employer. *Id*. at 345-46.  The court concluded that the non-diverse

defendant-employer had been improperly joined because the intentional tort exception to LWCA

exclusivity did not apply. *Id*. at 346.[8]

---

[8] *See also Moore v. Louisiana Generating, LLC*, No. 09-789, 2010 WL 565383, at *8 and n. 16 (M.D. La. Feb. 17, 2010) (improper joinder of employer-defendant where plaintiff did "not set forth any specific factual allegations or evidence with his motion to remand demonstrating that [defendant-employer], in requiring him to work on the subject machine, intended that he suffer injury or was virtually sure that his

Similarly, the Petition in this action fails to provide any specific factual allegations supporting a finding that Plaintiff has a possibility of recovery against PCS based on the intentional act exception. The allegations in the Petition regarding PCS "amount to a failure to provide a safe work place and failure to provide protective equipment, despite the use of certain legal phrases in an attempt to transform the claims to intentional torts." *See Bonner v. Georgia-Pac., LLC*, No. 12-456, 2013 WL 2470466, at *3 (M.D. La. June 7, 2013). In *Bonner*, which considered a motion to dismiss, the plaintiffs alleged that the defendant-employer "intentionally withheld" a positive lead test result from employees who continued to work in the absence of "any respiratory protection" and that the defendant "knew or should have known that serious bodily injury was substantially certain to follow" from those circumstances. *Id.* The court held that "a plaintiff cannot merely include the word 'intentional' or the phrase 'substantially certain' in a complaint to avoid application of the exclusive remedy provision of Louisiana's workers' compensation law." *Id.*[9] The court highlighted that the plaintiffs failed to plead "supporting factual allegations to show that [the employer-defendant] was substantially certain that Plaintiffs' alleged damages would follow from the alleged conduct." *Id.* at *4.

Here, the Petition does not allege any facts in support of the conclusory allegations that PCS knew the "hazardous materials" at issue were carcinogenic; that the Tyvek brand protective suits supplied did not provide adequate chemical protection with regard to those hazardous

---

injury would result" despite also alleging that the defendant-employer "knew or should have known of the unreasonably dangerous condition and/or defect in the machine in question, because of the numerous complaints and work orders on that particular machine").

[9] *See also McLin*, 102 F. Supp. 2d at 344-45 ("[T]he use of the word 'intentional' is 'not a talisman which automatically raises allegations of negligence to the level of intentional tort.'"); *Graft v. Mason*, No. 08-4820, 2009 WL 799973 (E.D. La. Mar. 19, 2009) ("Here, the plaintiff did state and restate the phrase 'substantially certain to follow' in his amended complaint. The use of those words alone, however, does not transform any set of facts into an intentional tort and does not provide protection from a well-founded motion to dismiss").

materials; or that use of the Tyvek brand protective suit in this specific work environment was substantially certain to lead to Plaintiff's injuries, particularly the development of Non-Hodgkin's Lymphoma.  The Petition does not allege whether PCS was aware of the materials comprising the Tyvek brand protective suits or that the Plaintiff or any other employees alerted PCS of the alleged lack of adequate chemical protection provided by the suit.  Indeed, the Petition does not even allege the nature of the "ultrahazardous activity" at issue, much less the specific chemicals at issue.[10]

Furthermore, the Petition does not allege that Plaintiff alerted PCS of any injuries resulting from the use of the Tyvek brand protective suit and that PCS required Plaintiff to continue working despite those injuries.  Accordingly, the two decisions relied upon by Plaintiff are distinguishable.  In *Robinson v. N. Am. Salt Co.*, 865 So.2d 98 (La. App. 1st Cir. 2003), which was decided on appeal from a jury verdict, the appellate court held that a jury's finding that a maintenance worker's injury while repairing a conveyer belt was substantially certain to occur was not erroneous.  Importantly, the jury found credible expert testimony providing that injury was inevitable given that the dangerous working conditions had been brought to the employer's attention. *Id.* at 108.

---

[10] Even if Plaintiff had alleged that PCS was substantially certain that the specific chemicals at issue would lead to his terminal illness, such an allegation, without supporting factual allegations regarding PCS's knowledge, would potentially still be insufficient to survive a motion to dismiss.  For example, the Eastern District of Louisiana dismissed a plaintiff's claim that her deceased husband's employer knew that occupation exposure to benzene made it substantially certain her husband would develop and later die from Acute Lymphoblastic Leukemia. *See Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 851 (E.D. La. 2011).  In granting dismissal of the relevant claims, the court stated that the plaintiff's allegation of substantial certainty was belied by her allegation that the defendant-employer merely knew that exposure to benzene and benzene-containing products "*could naturally, directly, and probably*" result in the disease. *Id.* (emphasis added).  Accordingly, because there was no allegation that the employer knew that the employees' disease was "nearly inevitable" as a result of the exposure to benzene, the claim could not escape LWCA's exclusivity provision.  Similarly, in the absence of supporting factual allegations that PCS knew that Plaintiff was being exposed to certain carcinogenic chemicals and that Non-Hodgkin's Lymphoma was "nearly inevitable" from such exposure while wearing the Tyvek brand protective suit, Plaintiff's claims against PCS cannot survive dismissal pursuant to Rule 12(b)(6).

In *Conner v. Kraemer-Shows Oilfield Services, LLC*, 876 F. Supp. 2d 750 (W.D. La. 2012), an employee injured his shoulder when he fell down a set of metal stairs while at work; the employer was notified of the accident and the employee's injury; and the employer allegedly required the employee to "continue to work with a debilitating condition after the incident." *Id*. at 754.  The court remanded the action, concluding that the plaintiff had a reasonable possibility of success on his intentional tort claim against his employer and, therefore, his employer was not improperly joined as a non-diverse defendant. *Id*. at 758.

Unlike in *Robinson* and *Conner*, there are no allegations in the instant Petition that PCS had been notified of injuries resulting from chemical exposure and that PCS required Plaintiff to continue working in the same condition despite such knowledge.[11]

For the foregoing reasons, the court concludes that the Petition raises insufficient allegations to allow a fact finder to infer that PCS committed an intentional act excluded by the LWCA by requiring Plaintiff to work using the Tyvek brand protective suit for protection.  The

---

[11] Plaintiff also includes in his memorandum a large block quote from *Conner*, 750 F. Supp. 2d at 756-57, discussing Louisiana state court appellate decisions reversing exceptions of no cause of action. (R. Doc. 24-1 at 8).  The referenced decisions all involved situations where inevitable injury was open and obvious, and, as alleged, the employer knew that injury was substantially certain to occur as a result of its instructions. *See Carey v. UMC*, 553 So.2d 472 (La. 1989) (one paragraph opinion reversing exception of no cause of action where employee alleged employer ordered him to operate a jackhammer and break up concrete slabs without assistance, where such assistance was customary in the trade and had previously been provided); *Rayford v. Angelo Iafrate Const., L.L.C.*, 806 So.2d 898 (La. App. 4th Cir. 2002) (reversing exception of no cause of action where employee alleged employer required him to start crane work near power lines while knowing that the power lines were still energized); *De Blanc v. International Marine Carriers, Inc.*, 748 So.2d 649 (La. App. 4th Cir. 1999) (reversing exception of no cause of action where employees alleged employer required the removal of asbestos from vessels by hand, without proper protective clothing, in non-compliance with state and federal safety precautions, and required the asbestos to be stored in stockpiles in the open, allowing the asbestos to blow freely through the shipyard and making it substantially certain the asbestos would be inhaled by the employees); *Trahan v. Trans–Louisiana Gas Company, Inc.*, 618 So.2d 30 (La. App. 3d Cir. 1993) (reversing exception of no cause of action where employee alleged that employer required him to remove contaminated odorant from natural gas in violation of safety regulations despite two prior occasions where employee had conducted "unprotected sniff tests" of the contaminated odorant and had become ill).

allegations, if taken as true, do not support a finding that PCS knew that Plaintiff's illness was

"substantially certain" (i.e., nearly inevitable) in light of his working environment.

Accordingly, PCS has been improperly joined as a defendant because Plaintiff's claims

against PCS, as alleged, are subject to LWCA's exclusivity provision.  There is, therefore,

complete diversity in this action and the court may properly exercise subject-matter jurisdiction.

### B.      PCS's Motion to Dismiss and Motion to Strike

The court now turns to PCS's Motion to Dismiss (R. Doc. 20) brought pursuant to Rule

12(b)(6), which authorizes a dismissal for "failure to state a claim upon which relief can be

granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  On a

motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "must accept as true

all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94

(2007).

In considering a Rule 12(b)(6) motion, a district court generally "must limit itself to the

contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v.*

*Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (quoting *Collins v. Morgan Stanley*

*Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).  "The court may also consider documents

attached to either a motion to dismiss or an opposition to that motion when the documents are

referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon*, 748 F.3d at

635.  Such documents are considered part of the pleadings. *Causey v. Sewell Cadillac-Chevrolet,*

*Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins*, 224 F.3d at 498-99)).  If the court decides to consider matters outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d).  Whether to consider documents outside of the pleadings is left to the "complete discretion" of the trial court.  *Isquith ex rel. Isquith v. Middle South Utils. Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988).

PCS has moved to strike two attachments to Plaintiff's opposition to the motion to dismiss. (R. Doc. 32).  As the exhibits to Plaintiff's opposition are not referenced in the Petition, the court will exclude these documents from consideration with regard to PCS's motion to dismiss. *See Brand Coupon*, 748 F.3d at 635.  The court will not strike the exhibits from the record, however, as they are relevant to Plaintiff's request for an opportunity to seek leave to amend the Petition.  Accordingly, the court will consider these documents for the sole purpose of determining whether Plaintiff should be granted an opportunity to seek leave to amend his Petition to raise additional allegations against PCS that may survive a Rule 12(b)(6) motion.

As discussed above, the court concludes that Plaintiff improperly joined PCS as a defendant because there is no reasonable basis to predict that Plaintiff has a possibility of recovery against PCS based on the allegations in the Petition.  The Fifth Circuit has stated that "summary judgment will always be appropriate in favor of a defendant against whom there is no possibility of recovery." *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 102 (5th Cir.1990). Accordingly, this court and other courts within the Fifth Circuit have summarily dismissed improperly joined defendants. *See*, *e.g.*, *Lapeyrouse v. State Farm Fire & Cas. Co.*, No. 14-52, 2014 WL 4373273, at *7-8 (M.D. La. Sept. 3, 2014); *Ellis v. Ethicon, Inc.,* No. 09-949, 2010 WL 2998602 (M.D. La. July 26, 2010); *Benavides v. EMC Mortgage Corp.*, 916 F. Supp. 2d 776, 783 (S.D. Tex. 2013); *Butler v. Louisiana State Univ. Health Sciences Ctr.*, No. 12-1838,

2012 WL 7784402 (W.D. La. Nov. 19, 2012), *report and recommendation adopted*, 2013 WL

1180873 (W.D. La. Mar. 20, 2013); *Gray v. Border Exp. Servs., Ltd.*, No. 11-128, 2012 WL

12385, at *8 (S.D. Miss. Jan. 3, 2012); *Moss v. Unum Grp. Corp.*, No. 10-0002, 2010 WL

3190399, at *3 (W.D. La. July 14, 2010), *report and recommendation adopted*, 2010 WL

3199728, at *4 (W.D. La. Aug. 11, 2010).

The Petition fails to sufficiently allege that PCS committed an intentional act or omission

that would qualify for the exception to the LWCA's exclusivity provision.  In short, Plaintiff did

not provide sufficient factual allegations in the Petition to support a finding that PCS knew that

Plaintiff's illness was "substantially certain" in light of his working environment.  Accordingly,

Plaintiff's claims against PCS must be dismissed pursuant to Rule 12(b)(6).

### C.     Opportunity to Amend the Petition

In his opposition to PCS's motion to dismiss, Plaintiff requests an opportunity for leave

to "replead" his allegations against PCS after conducting limited discovery. (R. Doc. 26 at 8).

PCS opposes this request as futile.  (R. Doc. 38 at 5).  Plaintiff has not submitted a proposed

amended pleading to the court or otherwise filed a motion for leave to amend.

The parties held a Rule 26(f) conference on or before December 4, 2015. (R. Doc. 39).

The Scheduling Order was issued on December 15, 2015. (R. Doc. 41).  Accordingly, Plaintiff

has had an opportunity to conduct discovery with regard to PCS.  Plaintiff's request for an

opportunity to conduct limited discovery is, therefore, moot.

Plaintiff did not amend his Petition as a matter of course pursuant to Rule 15(a)(1) and

has not otherwise filed a motion for leave to amend his Petition pursuant to Rule 15(a)(2).  The

court cannot determine whether any potential amendment is futile because Plaintiff has not

submitted a proposed pleading signed pursuant to Rule 11.  In light of Plaintiff's request for an

opportunity for leave to amend his allegations regarding PCS, and given the existence of Plaintiff's aforementioned prior statement, it is recommended that Plaintiff's claims against PCS be dismissed without prejudice, thereby providing Plaintiff the opportunity to seek leave to amend his Petition.

## IV.      Conclusion

Based on the foregoing, the court has subject-matter jurisdiction over this action because based on the Petition at the time of removal, PCS, a non-diverse defendant, was improperly joined to this action.  In light of the allegations in the Petition, which do not raise a plausible claim against PCS, it is recommended that the court dismiss Plaintiff's claims against PCS without prejudice.  Plaintiff shall have an opportunity to seek leave to amend his allegations with regard to PCS so that the deficiencies noted above may be remedied, if possible.

## RECOMMENDATION

It is the recommendation of the magistrate judge that Plaintiff's Motion to Remand (R. Doc. 24) be **DENIED**.

It is the further recommendation of the magistrate judge that PCS's Motion to Strike (R. Doc. 32) be **GRANTED IN PART AND DENIED IN PART**.  The materials at issue should only be considered for the limited purposes set forth in this report and recommendation.

It is the further recommendation of the magistrate judge that PCS's Motion to Dismiss (R. Doc. 20) be **GRANTED IN PART AND DENIED IN PART**, in that Plaintiff's claims against PCS be **DISMISSED WITHOUT PREJUDICE**; that PCS be granted the opportunity to file a motion for leave to amend—attaching a proposed amended pleading—on or before a date set by the district judge upon resolution of these pending motions or as otherwise set by the

court; and that failure to move within the time permitted, or denial of a timely motion for leave to amend, will result in the dismissal of Plaintiff's claims against PCS **with prejudice**.

Signed in Baton Rouge, Louisiana, on February 3, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**