## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MICHAEL WILLIAMS**                                            **CIVIL ACTION**

**VERSUS**

**NO. 15-644-SDD-RLB**

**SYNGENTA CORPORATION, ET AL.**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in Baton Rouge, Louisiana, on May 20, 2016.

                                                         **RICHARD L. BOURGEOIS, JR.**
                                                         **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MICHAEL WILLIAMS**                                    **CIVIL ACTION**

**VERSUS**

**NO. 15-644-SDD-RLB**

**SYNGENTA CORPORATION, ET AL.**


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Plaintiffs' Motion for Leave to File First Amended Civil Action Complaint (R. Doc. 50) filed on February 16, 2016.  The motion is opposed. (R. Doc. 55, 56). For the following reasons, Plaintiff's Motion should be denied.

**I.      Factual Background and Procedural History**

On or about August 31, 2015, Michael Williams[1] initiated this action against Syngenta Corporation and Syngenta Crop Protection, LLC ("Syngenta"), Hagemeyer North America, Inc. ("Hagemeyer"), and Power Cleaning Specialist, Inc. ("PCS") in the 18th Judicial District Court, Iberville Parish, Louisiana. (R. Doc. 1-2, "Petition").  The Petition alleges that while Mr. Williams was employed by PCS, he was exposed to "hazardous materials on the Syngenta Crop Protection site" in St. Gabriel, Louisiana ("Syngenta facility") "on a regular and systematic time until September 5, 2014." (Petition, ¶¶ 3.1, 3.2).  The Petition further alleges that the protective clothing Mr. Williams wore while working at the Syngenta facility was "a disposable Tyvek brand protective suit" marketed, distributed, and sold by Hagemeyer. (Petition, ¶ 3.2).  The Petition claims that the Defendants "knew that users of the protective suits such as the one used

---

[1] On October 3, 2015, Plaintiff's counsel informed the court that Mr. Williams died that morning. (R. Doc. 12). Through the instant Motion, Plaintiff's counsel names Mr. Williams' wife, Rhonda Williams, individually and as person representative of Mr. Williams' estate, as plaintiff.  To avoid confusion, the Court will refer to all motions filed by either Mr. Williams or Mrs. Williams as filed by "Plaintiff."

1

by Michael Williams would be participating in this ultra-hazardous activity" and, "[d]espite this knowledge, the Defendants failed to identify and evaluate the level of protection and exposure hazard, failed to provide the proper personal safety equipment, failed to warn of the dangerous condition, and failed to adequately train all persons involved, thus leading to the accident." (Petition, ¶ 3.3).  The Petition alleges that Mr. Williams was diagnosed with Non-Hodgkin's Lymphoma on September 5, 2014, as a result of his chemical exposure at the Syngenta facility. (Petition, ¶ 3.4).

With regard to Mr. Williams' former employer, the Petition alleges that PCS "knew or should have known that the lack of the proper safety equipment was substantially certain to lead to the injury and death of Michael Williams; however, it failed to offer the proper personal safety equipment necessary to provide for the personal well being and safety of its employees such as [Michael Williams]." (Petition, ¶ 6.2).  The Petition alleges that "PCS committed acts of omission and commission, which collectively and severally, were either intentional or constituted negligen[ce] and recklessness, which acts were a proximate cause of the injuries to [Michael Williams], the physical pain and mental anguish he suffered, and continues to suffer, and the damages suffered by [Michael Williams]." (Petition, ¶ 6.3).  Finally, the Petition alleges that "PCS did not provide workers' compensation benefits to [Plaintiff] for the injuries he sustained while working for it at Syngenta" and "PCS committed acts (including providing a suit that offered no chemical protection) which can only be described as intentional and are actionable as an exception to the exclusivity rule found in the workers compensation scheme." (Petition, ¶ 6.4).

In addition, the Petition alleged "[PCS's] disregard for [Michael Williams'] safety by allowing him to be exposed to hazardous chemicals when it knew or should have known the

personal safety equipment offered to [Michael Williams] was inadequate and dangerous and that the exposure allowed by the personal safety equipment to hazardous chemicals that will cause death and serious bodily injuries constituted an ultra-hazardous activity under Louisiana Law." (Petition, ¶ 7.1).

On September 28, 2015, Syngenta removed the action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1).  The Notice of Removal alleges that Mr. Williams is a citizen of Louisiana; Syngenta Corporation is a citizen of Delaware; Syngenta Crop Protection, LLC is a citizen of Delaware and Minnesota; Hagemeyer is a citizen of Delaware and South Carolina; and PCS is a citizen of Louisiana. (R. Doc. 1 at 2-3).

The Notice of Removal asserts that PCS, a non-diverse defendant, was improperly joined as a defendant in light of the Louisiana Workers' Compensation Act's ("LWCA") exclusivity provision, La. R.S. § 23:1032, and, accordingly, its citizenship must be ignored for jurisdictional purposes. (R. Doc. 1 at 3-7).  Syngenta attached to the Notice of Removal an affidavit by the vice president of PCS providing that Plaintiff informed him of his diagnosis on September 5, 2014, but that he "was not aware that Mr. Williams or anyone else believed Mr. Williams' illness was related to any work undertaken by him for [PCS] at the Syngenta plant." (R. Doc. 1-4).

On October 26, 2015, PCS moved to dismiss the claims for relief asserted against it pursuant to Rule 12(b)(6) on the basis that the Petition did not allege sufficient facts to support a claim under the LWCA's exclusivity exception for intentional acts. (R. Doc. 20).  Plaintiff opposed the motion to dismiss (R. Doc. 26), attaching communications between counsel regarding the coordination of the deposition of Mr. Williams (R. Doc. 26-1) and a transcribed statement by Mr. Williams made on August 20, 2015 (R. Doc. 26-2).

On October 28, 2015, Plaintiff moved for remand on the basis that the Court lacks diversity jurisdiction because PCS is a proper non-diverse defendant in this action. (R. Doc. 24).

On November 25, 2015, PCS filed a motion to strike the two exhibits attached to Plaintiff's Opposition to PCS's Motion to Dismiss. (R. Doc. 32).

On February 3, 2016, the undersigned recommended that the district judge find that PCS was improperly joined as a defendant because Plaintiff's claims against PCS are subject to the LWCA's exclusivity provision; deny remand on the basis that there is complete diversity notwithstanding the inclusion of PCS as a non-diverse defendant; dismiss PCS from the action without prejudice; and grant Plaintiff the opportunity to amend the Petition to assert a claim, if possible, against PCS that would survive the LWCA's exclusivity provision. (R. Doc. 49). Furthermore, the undersigned recommended that the exhibits attached to Plaintiff's Opposition not be considered with regarding PCS's motion to dismiss, but considered with regard to the determination of whether to grant Plaintiff the opportunity to seek leave to amend the Petition. (R. Doc. 49 at 18).

In recommending that the district judge to conclude that the Petition did not state a cause of action against PCS, the undersigned made the following observations:

- [T]he Petition does not allege any facts in support of the conclusory allegations that PCS knew the "hazardous materials" at issue were carcinogenic; that the Tyvek brand protective suits supplied did not provide adequate chemical protection with regard to those hazardous materials; or that use of the Tyvek brand protective suit in this specific work environment was substantially certain to lead to Plaintiff's injuries, particularly the development of Non-Hodgkin's Lymphoma.

- The Petition does not allege whether PCS was aware of the materials comprising the Tyvek brand protective suits or that the Plaintiff or any other employees alerted PCS of the alleged lack of adequate chemical protection provided by the suit.

4

- [T]he Petition does not . . . allege the nature of the "ultrahazardous activity" at issue, much less the specific chemicals at issue.

- [T]he Petition does not allege that Plaintiff alerted PCS of any injuries resulting from the use of the Tyvek brand protective suit and that PCS required Plaintiff to continue working despite those injuries.

- [T]here are no allegations in the . . . Petition that PCS had been notified of injuries resulting from chemical exposure and that PCS required Plaintiff to continue working in the same condition despite such knowledge.

(R. Doc. 49 at 15-16).

On February 16, 2016, in light of the deadline to amend established by the Scheduling Order, Plaintiff filed the instant Motion seeking to amend the Petition. (R. Doc. 50). The proposed Amended Complaint (R. Doc. 50-1) names Ms. Williams as a substitute plaintiff for Mr. Williams, and correspondingly asserts survival and wrongful death claims. The proposed Amended Complaint also asserts additional factual allegations for the purpose of asserting intentional acts by PCS that would survive the LWCA's exclusivity provision. It is this latter set of amendments that is at issue.

The proposed Amended Complaint identifies the alleged ultra-hazardous activity at issue, identifies the alleged hazardous (and carcinogenic) chemicals to which Mr. Williams was exposed, and asserts that the Defendants knew of the inefficacy of the safety equipment provided in light of prior incidents. More specifically, the proposed Amended Complaint provides that the plant at issue "manufactures, formulates, and packages pesticides, herbicides, and specialty chemicals" and "manufactures or uses carcinogenic and potentially carcinogenic chemicals or chemicals probably contaminated with carcinogens, including, but not limited to, benzene, toluene, triazine, and glyphosate." (Am. Compl. ¶ 17). It further alleges that "Defendants frequently failed to provide [Michael Williams] with safety equipment that offered any meaningful protection from either the acute and [sic] long-term effects of the chemicals to which

5

he was exposed . . . even though equipment offering more significant protection [than a disposable Tyvek suit] was available to Defendants." (Am. Compl. ¶ 21). Moreover, it alleges that "the inadequate protection provided by the suits was widely discussed by those required to perform industrial cleaning at Syngenta." (Am. Compl. ¶ 25).

More specific allegations are also lodged specifically against PCS in the proposed Amended Complaint, including references to the transcribed statement of Michael Williams prior to this death:

> Defendant PCS knowingly and intentionally sent Michael Williams' [sic], their employee [,] into a work environment at the Syngenta St. Gabriel Chemical Plant that would cause him injury. In fact, Michael Williams told Defendant PCS that he was suffering acute injury from chemical burns. Defendant PCS willfully, maliciously, and intentionally ignored Michael Williams' complaint and its own knowledge of the dangers at the Syngenta St. Gabriel Chemical Plant, including the cancer diagnosis of at least one other employee, and willfully, intentionally, and maliciously assigned Michael Williams to a job knowing he would suffer injury. (Am. Compl. ¶ 33).
>
> PCS assigned Michael Williams to work at the Syngenta St. Gabriel Chemical Plant under factual circumstances supporting an allegation that PCS committed intentional acts that made injury to Michael Williams a substantial certainty. Specifically, PCS intentionally exposed Michael Williams to chemicals that it knew were certain to cause injury to Michael Williams. Michael Williams expressly told his PCS supervisor that the disposable Tyvek suits allowed liquid penetration that had caused Michael Williams actual injury--significant burning that did not resolve quickly and recurred with additional exposure. *See* Michael Williams' August 8, 2015, sworn statement, p. 10-11. The inadequacy of the suits was known to PCS, because it was widely discussed. *Id*. The Tyvek suits were chosen by PCS for cost-saving, even when it was known more protection was needed. *Id*. at 10[.] PCS knew that a co-worker, Stevie Steven, had been diagnosed with Non-Hodgkin's Lymphoma while working in much the same conditions as Michael Williams at the Syngenta St. Gabriel Chemical Plant. *Id*. at 12 and 18. (Am. Compl. ¶ 45).
>
> PCS knew that the disposable Tyvek suits permitted liquid chemical penetration, and that least one other PCS employee developed the same cancer that killed Michael Williams, but intentionally did nothing to improve safety. Instead, PCS sent Michael Williams back to work in exactly the same conditions that had caused him recurring injury. PCS's misconduct was intentional, placed reduced cost above safety, and was substantially certain to result in further injury to

6

Michael Williams. Upon information and belief, Michael Williams, as result, developed and died from the same cancer suffered by co-worker Stevie Stevens. (Am. Compl. ¶ 46).

PCS assigned Michael Williams to work at the Syngenta St. Gabriel Chemical Plant, with factual knowledge that Michael Williams would be injured or die. PCS had actual knowledge from Michael Williams' own report that he was injured from chemical exposure. Yet, with that knowledge PCS, failed to take any corrective measures, increasing the certainty that Michael Williams would be further injured or die. PSC's intentional acts proximately caused Michael Williams' injury and death. (Am. Compl. ¶ 47).

On February 29, 2016, after the instant Motion was filed, the district judge adopted the undersigned's recommendations, denied remand, dismissed PCS without prejudice, and granted Plaintiff the opportunity to file a motion for leave to amend. (R. Doc. 53).

## II.   Arguments of the Parties

In support of its Motion to Amend, Plaintiff argues that amendment should be freely permitted, the proposed amendments are not prejudicial to the Defendants, and that the amendments are not the result of undue delay, bad faith, or dilatory motive. (R. Doc. 50-2 at 3).

In opposition, PCS argues that approval of the proposed Amended Complaint would be futile, and therefore it is in the Court's discretion to deny the motion. (R. Doc. 55 at 3).  PCS argues that the proposed Amended Complaint suffers the same deficiencies as the initial Petition, namely that it fails to allege any specific facts that would show PCS knew to a substantial certainty that Plaintiff would develop non-Hodgkin's Lymphoma. (R. Doc. 55 at 5-7).  PCS further argues that even as amended, Plaintiff's claims fail to satisfy the intentional tort exception to the LWCA. (R. Doc. 55 at 7-9).

Syngenta adopts by reference the arguments asserted by PCS. (R. Doc. 56).

7

**III.     Law and Analysis**

    **A.     Legal Standards Governing Amendments to Pleadings**

Amendments to pleadings are generally governed by Rule 15 of the Federal Rules of Civil Procedure.  Under Rule 15, after the period for amendment as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and the "court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.,* 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)).  Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted).

The court may consider several factors when determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment. . . ."  See *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Nonetheless, a decision to grant leave is within the sound discretion of the court, even if reasons to deny leave exist. *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985).  Likewise, "if the district court lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial." *Id.* (internal quotations omitted).

The court may deny leave to amend on the basis of futility. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to

8

deny a motion to amend if it is futile."). Denial of leave to amend on the basis of futility is "premised . . . on the court's evaluation of the amendment as insufficient to state a claim" upon which relief could be granted. *Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985). In other words, "the same standard of legal sufficiency as applies under Rule 12(b)(6)," applies to determining futility. *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 873 (5th Cir. 2000) (internal quotations omitted); *see also* Fed. R. Civ. P. 12(b)(6) (defendant may move to dismiss for "failure to state a claim upon which relief can be granted").[2] A proposed complaint is legally insufficient "only if there is no set of facts that could be proven consistent with the allegations in the complaint that would entitle the plaintiff to relief." *Power Entm't, Inc. v. Nat'l Football League Props., Inc* ., 151 F.3d 247, 249 (5th Cir. 1998).

**B.     Legal Standards for LWCA Exclusivity**

The LWCA is an employee's exclusive remedy against his employer and any coworkers for personal injuries sustained during the course and scope of employment, and is ordinarily limited to recovering workers' compensation benefits rather than tort damages. La. R.S. 23:1032(A); *see McClin v. H & H Lure Co.*, 102 F. Supp. 2d 341, 343 (M.D. La. 2000). There is an exception to the exclusive remedy when the employee's injuries are the result of an intentional act. La. R.S. 23:1032(B). The plaintiff bears the burden of demonstrating the work-related injury resulted from an intentional act. *Mayer v. Valentine Sugars, Inc*., 444 So.2d 618, 621 (La. 1984). The intentional tort exception to the LWCA applies when the defendant/employer "either (1) consciously desires the physical result of his act, whatever the

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct." *Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 195 (5th Cir. 2002) (quoting *Bazley v. Tortorich*, 397 So.2d 475, 482 (La. 1981)).

The intentional act exception to workers' compensation is narrowly construed. *Reeves v. Structural Preservation Systems*, 731 So.2d 208 (La. 1999). Generally, Louisiana courts recognize that "mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulation or the failure to use safety equipment by an employer does not constitute intentional wrongdoing." *DelaHoussaye v. Morton Intern. Inc.,* 300 Fed. App'x 257, 258 (5th Cir. 2008) (citing *Micele v. CPC of La., Inc.*, 709 So.2d 1065, 1068 (La. App. 4th Cir. 1998)); *see also Rosales v. Bunzzy's Enter. Realty LLC*, No. 06-11149, 2008 WL 754856, at *2 (E.D. La. Mar. 19, 2008) (identifying certain situations that Louisiana courts have determined "almost universally do not form the basis of an intentional tort: failure to provide a safe place to work, poorly designed machinery, failure to follow OSHA safety provisions, failure to provide requested safety equipment, and failure to correct unsafe working conditions.") (citing *Zimko v. American Cyanamid*, 905 So.2d 465, 477 (La. App. 4th Cir. 2005)).

The Louisiana Supreme Court has noted that "[b]elieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." *Reeves*, 731 So.2d at 212. The phrase "'[s]ubstantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.'" *Id*. (citing *Jasmin v. HNV Cent. Riverfront Corp.*, 642 So. 2d 311, 312 (La. App. 4th Cir. 1994)). See also *Guillory v. Domtar*

*Industries Inc.*, 95 F.3d 1320, at 1327 (5th Cir. 1996) ("[T]he substantially certain test is satisfied when an employer consciously subjects an employee to a hazardous or defective work environment where injury to the employee is nearly inevitable—that is, injury is 'almost certain' or 'virtually sure' to occur or is incapable of being avoided.") (emphasis original) (citing *Kent v. Jomac Products, Inc*., 542 So.2d 99, 100 (La App. 1st Cir. 1989); *Bourque v. Nan Ya Plastics Corp., America*, 906 F. Supp. 348, at 353 (M.D. La. 1995) ("An injury is not "substantially certain" to occur merely because a high probability of injury exists; injury is only intentionally caused where the injury is virtually sure to occur, or nearly inevitable."), *aff'd*, 157 F.3d 903 (5th Cir. 1998).

### C.   Whether the Proposed Amendments Regarding PCS Are Futile

There are at least four significant factual allegations in the proposed Amended Complaint that were not specifically asserted in the original Petition. First, the proposed Amended Complaint identifies the alleged ultra-hazardous activity at issue and the alleged hazardous (and carcinogenic) chemicals at issue. (Am. Compl. ¶ 17). Second, the proposed Amended Complaint alleges that PCS knew of the inadequacies of the Tyvek suits because they were widely discussed. (Am. Compl. ¶ 25). Third, the proposed Amended Complaint alleges that PCS sent Mr. Williams to perform the alleged ultra-hazardous activity knowing that Mr. Williams' co-employee was diagnosed with Non-Hodgkin's Lymphoma after exposure to the same chemicals that Plaintiff was exposed to at the Syngenta Facility. (Am. Compl. ¶¶ 45-46). Fourth, the proposed Amended Complaint alleges that Mr. Williams was previously injured by liquid penetration of chemicals while wearing the Tyvek suits, such injury consisting of a "burn [to] his skin," and that he notified PCS of his injury. (Am. Compl. ¶¶ 33, 45-47).

Despite these additions, the Court must conclude that the proposed amendments, to the extent they are directed at PCS, are futile. As with the original Petition, there are no allegations that PCS consciously desired Mr. Williams to contract Non-Hodgkin's Lymphoma. Moreover, the proposed amendments do not contain sufficient factual allegations suggesting that PCS knew, to a substantial certainty, that Mr. Williams would develop and die from Non-Hodgkin's Lymphoma in light of the workplace protection provided. At most, the proposed amendments allege that PCS was aware that at least one employee who performed similar work as Mr. Williams contracted Non-Hodgkin's Lymphoma. There are no proposed amendments, however, alleging that PCS was aware that the co-employee's Non-Hodgkin's Lymphoma was causally linked to the alleged ultra-hazardous activity performed at the Syngenta plant, any alleged inadequacies of the Tyvek suit, and/or to the employee's exposure to the chemicals identified in the proposed Amended Complaint. There are no allegations that the chemicals to which Mr. Williams was exposed inevitably cause Non-Hodgkin's Lymphoma or any other form of cancer.[3] Similarly, Plaintiff does not allege any causal connection between his alleged chemical burns and development of Non-Hodgkin's Lymphoma. In the absence of supporting factual allegations indicating that PCS knew that its employees were exposed to carcinogenic chemicals that caused Non-Hodgkin's Lymphoma, Plaintiff cannot escape the exclusivity provision of the LWCA.[4]

---

[3] PCS admits that the chemicals identified in the proposed Amended Complaint have "well-publicized links to certain forms of cancer." (R. Doc. 55 at 8-9). Plaintiff has not alleged, however, that PCS knew that exposure to these chemicals wearing the protection provided would inevitably cause cancer, or more specifically, Non-Hodgkin's Lymphoma. While Plaintiff may ultimately prove causation, the issue before the Court is what PCS knew prior to the alleged injury, not whether the chemical exposure ultimately caused the injury.

[4] The Court distinguishes Louisiana state court appellate decisions reviewing exceptions of no cause of action where the inevitable injury was open and obvious, and, as alleged, the employer knew that injury was substantially certain to occur as a result of its instructions. *See Carey v. UMC*, 553 So.2d 472 (La. 1989) (one paragraph opinion reversing exception of no cause of action where employee alleged employer ordered him to operate a jackhammer and break up concrete slabs without assistance, where such assistance was customary in the trade and had previously been provided); *Rayford v. Angelo Iafrate Const., L.L.C.*, 806 So.2d 898 (La. App. 4th Cir. 2002) (reversing exception of no cause of action where employee alleged employer required him to start crane work near power lines while knowing that the power lines were still energized); *De Blanc v. International Marine Carriers, Inc.*, 748 So.2d 649 (La. App. 4th Cir. 1999) (reversing exception of no cause of action where employees alleged employer required

Even if Plaintiff had alleged that PCS was substantially certain that the specific chemicals at issue would lead to his terminal illness, such an allegation, without supporting factual allegations regarding PCS's knowledge, would potentially still be insufficient to survive a motion to dismiss.  For example, the Eastern District of Louisiana dismissed a plaintiff's claim that her deceased husband's employer knew that occupation exposure to benzene made it substantially certain her husband would develop and later die from Acute Lymphoblastic Leukemia. *See Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 851 (E.D. La. 2011).  In granting dismissal of the relevant claims, the court stated that the plaintiff's allegation of substantial certainty was belied by her allegation that the defendant-employer merely knew that exposure to benzene and benzene-containing products "*could naturally, directly, and probably*" result in the disease. *Id*. (emphasis added).  Accordingly, because there was no allegation that the employer knew that the employees' disease was "nearly inevitable" as a result of the exposure to benzene, the claim could not escape LWCA's exclusivity provision.  Similarly, in the absence of supporting factual allegations that PCS knew that Mr. Williams was being exposed to certain carcinogenic chemicals and that Non-Hodgkin's Lymphoma was "nearly inevitable" from such exposure while wearing the Tyvek brand protective suit, Plaintiff's claims against PCS cannot survive dismissal pursuant to Rule 12(b)(6).

Based on the foregoing, the Court concludes that the proposed allegations regarding PCS in the proposed First Amended Complaint are futile, as they do not allege an intentional act by PCS that would survive the LWCA's exclusivity provision.

---

the removal of asbestos from vessels by hand, without proper protective clothing, in non-compliance with state and federal safety precautions, and required the asbestos to be stored in stockpiles in the open, allowing the asbestos to blow freely through the shipyard and making it substantially certain the asbestos would be inhaled by the employees); *Trahan v. Trans–Louisiana Gas Company, Inc.*, 618 So.2d 30 (La. App. 3d Cir. 1993) (reversing exception of no cause of action where employee alleged that employer required him to remove contaminated odorant from natural gas in violation of safety regulations despite two prior occasions where employee had conducted "unprotected sniff tests" of the contaminated odorant and had become ill).

13

**IV.     Recommendation**

**IT IS RECOMMENDED** that Plaintiff's Motion for Leave to File First Amended Civil Action Complaint (R. Doc. 50) be **DENIED without prejudice** to refile for the purpose of seeking leave to substitute the named plaintiff and to assert any additional claims and factual allegations against defendants Syngenta and/or Hagemeyer.  It is recommended that the motion be **DENIED with prejudice** for the purpose of any cause of action against PCS.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against PCS, which were previously dismissed without prejudice, be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on May 20, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**